**NOT FOR PRINTED PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| DOUGLAS FLOYD, et al., § § *Plaintiffs,* § § v. § § SATU TUULIA AALAEI, § § *Defendant*. § § | CIVIL ACTION No. 4:15-cv-525 JUDGE RON CLARK |

### MEMORANDUM OPINION AND ORDER ENFORCING AGREEMENT AND MAKING FINDINGS AND CONCLUSIONS OF LAW

Before the court are Plaintiffs' Motion for Entry of Proposed Order (Dkt. # 95) and Defendant's Motion to Enforce Settlement Agreement (Dkt. # 98). For the reasons discussed below, Plaintiffs' Motion for Entry of Proposed Order (Dkt. # 95) is granted in part and denied in part, and Defendant's Motion to Enforce Settlement Agreement (Dkt. # 98) is granted in part and denied in part.

### BACKGROUND

Plaintiffs Douglas T. Floyd and Mark D. Floyd sued Defendant Satu Tuulia Aalei (identified by her attorney as Ms. Lowe) in state court, alleging a state law claim of defamation. Ms. Lowe removed the case on the basis of diversity jurisdiction. Douglas Floyd is an attorney at law.[1] This suit arises from his representation of Ms. Lowe in a criminal matter and in a divorce action. Ms. Lowe was arrested in April 2007 for aggravated assault and criminal mischief. *See* Dkt. # 18-1, at p. 2. Douglas Floyd and Ms. Lowe entered into a "Contract of Employment for

---

[1] Mark Floyd is Douglas Floyd's son, and at the time of this suit, Mark Floyd was in the business of real estate, and his offices were in the same suite as his father's law offices.

1

Legal Services," under which Ms. Lowe agreed to transfer title to certain real property she owned to Douglas Floyd, by Warranty Deed, as collateral for the payment of his attorney's fees.

The attorney-client relationship between Ms. Lowe and Douglas Floyd deteriorated, and Ms. Lowe terminated Douglas Floyd as her attorney on or about October 23, 2007. Douglas Floyd asserts that his communications with Ms. Lowe "left [him] with the distinct impression that she was not going to pay the balance he had billed her," and therefore, he recorded the Warranty Deed on October 31, 2007. (Dkt. # 18-1, at p. 6–7). In November 2007, Ms. Lowe paid the outstanding balance (Dkt. # 18-1, at p. 7 and Dkt. # 12-1, at p. 9), and Douglas Floyd transferred the property back to her on December 12, 2007 (*see* Dkt. # 18-1, at p. 7; Dkt. # 12-1, at pp. 14–15).

Ms. Lowe posted statements, which she contends are a "consumer review" about Douglas and Mark Floyd, on RipoffReport.com. (Dkt. # 44, at p. 2, ¶ 6a); (Dkt. # 63, at p. 3, ¶6). The Floyds brought suit against Ms. Lowe, alleging that her statements on RipoffReport.com are defamatory.

On January 30, 2017, the court began jury selection in this matter and ultimately empaneled a jury of nine. On February 1, 2017, counsel gave opening statements. Upon the conclusion of opening statements, and before the Floyds called their first witness, counsel for the Floyds, Mr. Norcross, requested ten minutes to discuss settlement. About one hour later, counsel returned and announced that they had reached a settlement.

Counsel for Ms. Lowe outlined the terms of the settlement on the record:

> MR. AALAEI:    The parties—Lowe, Mark Floyd, Douglas Floyd—agree to settle the entire action and agree to a mutual full release of claims—of all claims in the action and any claims that could have been brought on the following terms.
> The parties shall bear their own costs and attorneys' fees.
> Neither side will pay the other side any monetary compensation as part of the settlement.

2

      Within 14 days the parties will complete a long form settlement agreement and will submit a joint stipulation and order of dismissal which also makes findings sufficient to comply with Ripoff Report's requirements for removal of content, including that the order is supported by admissible evidence including reasonably corroborated evidence and affidavits and sworn declarations that are part of the court record.

      THE COURT: All right. So, let me just confirm that we're talking about both sides are dismissing all claims they have against each other as of this time, whether under constitutional law, statutory law, or common law, whether heretofore asserted or not asserted, and that both sides will bear their own attorneys' fees and costs and that the dismissals of all those claims on both sides will be with prejudice, that the court will retain jurisdiction to enforce the settlement. Is that plaintiffs' understanding?

      MR. NORCROSS: Yes, your Honor.

      THE COURT: And is that defendant's understanding?

      MR. AALAEI: Yes, your Honor.

      THE COURT: And just to be sure—I don't want this coming up again later on.

      Since you are here, Ms. Lowe, would you please step forward . . . .

***

      THE COURT: Okay. And as I understand it, both sides are going to agree to file whatever is needed with the ripoffreport.com to get them to take down the postings that you had entered. Do you understand that?

      MS. LOWE:   Yes, sir.

      THE COURT: Okay. And if ripoffreport.com wants a statement or a letter from you, then you're willing to provide it?

      MS. LOWE:   Yes, sir.

      THE COURT: Okay. Same questions to Mr. Floyd and Mr. Floyd, both of you. You understand the same thing. You're giving up all claims, whether you have asserted them or not in this case, against defendant and that you are also agreeing to submit whatever papers are needed to take down the statements that were made by defendant in this ripoffreport.com.

      MR. DOUGLAS FLOYD:  Yes.

      MR. MARK FLOYD: Yes, sir.

***

      MR. NORCROSS: Just to be clear, I believe it is clear; but I want to make sure it is really clear for the record that both parties are stipulating that the order is going to be supported by admissible evidence so that the court will be able to consider that since it hasn't been entered.

      THE COURT: Okay. Right. We're going to—that's the next thing we go into. Because of that, both sides have submitted binders of exhibits that are listed on your exhibit list; and I would want it—I mentioned this to you before that I want

3

> both sides to stipulate that I may consider all of those exhibits in when I enter an order that – as you laid out, that there is some admissible evidence.
> I have gone ahead and reviewed these already. If either one of you thinks that there needs to be an additional affidavit or an additional statement on the record, we can do that also. I think the evidence is already in. If both sides will withdraw their objections and those can be considered admitted and those can be considered that I can review them and rely upon them, then I think we're there. But if you think there is some other statement that needs to be made, let me know.
> MR. NORCROSS: We withdraw our objections, your honor.
> MR. AALAEI: Same.
> THE COURT: Okay. So, both sides have withdrawn their objections and both sides stipulate that all of the exhibits that have been provided to the court, as listed on your exhibit list and then these—the plaintiff's exhibit book, for example, that I have that you provided including this deposition with the 27 exhibits attached and then the defendant's exhibit book as updated—I think you're up to DX 27.
> MR. AALAEI: Yes, your Honor.
> THE COURT: I can rely on all of those in entering the order?
> MR. AALEI: Yes.

Trans., Dkt. # 99-1. Specifically, the court admitted, without objection, each exhibit that each party had supplied to the court at final pretrial. As part of final pretrial preparation, the parties had submitted the exhibits that they intended to rely upon at trial. The Floyds' exhibit notebook contained thirty-one exhibits, including the sworn deposition of Ms. Lowe and various e-mails between the parties. Ms. Lowe submitted twenty-seven exhibits, including communications between the parties. The court pointed out to counsel that to make findings as to whether the posted statements were false and defamatory, the court would have to weigh the evidence, as it would in a bench trial, to determine which exhibits were more credible and entitled to more weight, and which evidence supports the court's order.

The parties then explained:

> MR. NORCROSS: We will need the order signed and entered, and then we would submit that to Ripoff Report.
> THE COURT: Right. And how long do you think it will take to draft out the order for me to sign as opposed to the long form settlement agreement?
> MR. NORCROSS: Both will be in 14 days.
> MR. AALAEI: Fourteen days, yeah.

4

> THE COURT: Okay. Then, I will sign those, get those back to you; and then within a total of 30 days, assuming ripoffreport.com doesn't ask for some additional document, that will be the deadline for giving me the final written motions to—joint motion to dismiss with prejudice. . . .

Trans., Dkt. # 99-1. After this colloquy, the jury returned to the courtroom and was dismissed. The parties then further outlined on the record the specific wording that the court order sent to RipoffReport.com would include.

> THE COURT: Okay. And we've now just been discussing exactly what is going to have to be in the order just to be sure there is no confusion later on.
> So, counsel, go ahead and restate that language so that we all have it firmly in mind.
> MR. AALAEI: The order is supported by admissible evidence including reasonably corroborated evidence and affidavits and sworn declarations that are part of the court record.
>
> ***
>
> MR. NORCROSS: . . . I want to read something to make sure it is really clear.
> THE COURT: Okay. Go ahead.
> MR. NORCROSS: This is right off Ripoff Report's website. It says, "The order is supported by admissible evidence including reasonably corroborated affidavits under oath that specifically identified statements of fact in the report on Ripoff Report are false and defamatory."
> And, so, what we're proposing in the order is that we will identify those specific statements by referencing the report numbers, which are essentially the consumer's review. Each consumer review gets assigned a report number.
> MR. AALAEI: You know, the parties' settlement agreement will include a provision that neither side is admitting any liability.
> THE COURT: That's fine.

Trans., Dkt. # 99-1. The parties were then excused.

On February 17, 2017, the Floyds filed a Motion for Extension of Time to file a proposed order. (Dkt. # 91). The court granted the Floyds' Motion, extending the deadline to file the proposed order to February 28, 2017. (Dkt. # 92). On February 28, 2017, the Floyds filed a Motion

5

for Leave to File Motion for Entry of Proposed Order (Dkt. # 94)[2] and a Motion for Entry of Proposed Order (Dkt. # 95). Likewise, Ms. Lowe filed a Motion to Enforce Settlement Agreement. (Dkt. ## 98, 99, 101). Subsequently, the Floyds filed a Motion for Attorney's Fees (Dkt. # 103).

On June 26, 2017, the court held a hearing on the parties' Motions. (Dkt. # 107). It became clear at the hearing that tension between the parties remained as to the precise wording of the parties' proposed order to be provided to RipoffReport.com. After each party explained their objections to the other's proposed language, the undersigned took the matter under advisement to draft this Order to be provided to RipoffReport.com. The court has carefully considered the evidence submitted by all parties, the pleadings and paper on file, and the representations, agreements, and arguments of the parties.

## ANALYSIS

### I. The Parties' Settlement Motions

"A settlement agreement, once entered into, cannot be repudiated by either party and will be summarily enforced." *United States v. City of New Orleans*, 731 F.3d 434, 439 (5th Cir. 2013). To determine the validity of a settlement agreement, a federal court sitting in diversity applies the law of the forum state. *Matter of Omni Video, Inc.*, 60 F.3d 230, 232 (5th Cir. 1995). Because Texas law applies in this diversity case, the court will interpret the agreement according to Texas law. *Id.* Under Texas law, a settlement agreement may be either (1) "in writing, signed and filed with the papers as part of the record," or (2) "made in open court and entered of record." TEX. R. CIV. P. 11. This settlement agreement was made in open court and entered of record and therefore can be enforced. "Once a party authorizes settlement, 'that party remains bound by the terms of

---

[2] The undersigned has already denied as moot Plaintiffs' Motion for Leave (Dkt. # 94). (Dkt. # 107).

6

the agreement' and cannot 'change[] his mind when presented with the settlement documents.'" *Evans v. T-Mobile USA, Inc.*, No. 4:15-cv-00578, 2017 WL 661797, at *1 (E.D. Tex. Feb. 16, 2017).

Under Texas law, the terms of an agreement are to be interpreted in harmony with one another. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) ("We consider the entire writing and attempt to harmonize and give effect to all the provisions of the contract by analyzing the provisions with reference to the whole agreement."). Pursuant to the settlement agreement made in open court on February 1, 2017, and the agreements of the parties stated at the June 26, 2017 hearing, the Order that the parties submit to RipoffReport.com will include the following.

### A.    The Order will reference both Report No. 1153049 and Report No. 492539.

When parties announced settlement on February 1, 2017, they agreed to submit to the court a proposed order, which the court would then sign for the parties to submit to RipoffReport.com in an attempt to have "the postings" removed. (Dkt. # 106, at p. 5). As the parties conferred about the wording of the proposed order, they could not agree over which postings would be removed as part of the settlement agreement. (Dkt. ## 95, 98, 100-1). Ms. Lowe's most recent proposed order, however, referenced both Report No. 1153049 and Report No. 492539. (Dkt. # 105-1). Compelling interests of finality and fairness demand that the court order include references to both Report No. 1153049 and Report No. 492539. *See In re Cont'l Airlines Corp.*, 907 F.2d 1500, 1522 (5th Cir. 1990). To interpret the settlement agreement made in open court as referring to only part of the statements on RipoffReport.com would result in an agreement that was meaningless and worthless. The dispute would not be resolved.

**B.     The Order will not direct RipoffReport.com to take any specific action.**

At the June 26, 2017 hearing, the Floyds stated that they were opposed to the following language in Ms. Lowe's proposed order: "The statements published in reports numberd [sic] 1153049 and 492539 located on the internet at www.ripoffreport.com **should be removed or redacted by the website's operator pursuant to the stipulation of the parties and this Order**." (Dkt. # 105-1, at p. 4) (emphasis added). At the June 26, 2017 hearing, both parties agreed that the court had no authority to order RipoffReport.com, a third-party, to take any specific action related to this case. *See Blockowicz v. Williams*, 675 F. Supp. 2d 912, 916 (N.D. Ill. 2009) ("The court is sympathetic to the Blockowiczs' plight; they find themselves the subject of defamatory attacks on the internet yet seemingly have no recourse to have those statements removed from the public view. Nevertheless, Congress has narrowly defined the boundaries for courts to enjoin third parties, and the court does not find that [the third-party] falls within those limited conscriptions based on the facts presented here."), *aff'd* 630 F.3d 563 (7th Cir. 2010).

**C.     The Order will include specific findings that certain statements in Report No. 1153049 and Report No. 492539 are "false and defamatory as a matter of law," but the Order will not include any statements that Ms. Lowe has admitted to liability.**

The parties agreed that all objections to exhibits were withdrawn. Counsel for Ms. Lowe himself also stated that part of the agreement was that parties would "submit a joint stipulation and order of dismissal which also makes findings sufficient to comply with Ripoff Report's requirements for removal of content, including that the order is supported by admissible evidence including reasonably corroborated evidence and affidavits and sworn declarations that are part of the court record." (Trans., Dkt. # 99-1, at pp. 3–4).

Ms. Lowe argued at the June 26, 2017 hearing that the court order should not include any finding that certain statements are "false and defamatory as a matter of law" because this would

8

be in violation of the settlement agreement announced on February 1, 2017, in which her counsel stated, "You know, the parties' settlement agreement will include a provision that neither side is admitting any liability." (Dkt. # 106, at p. 19). But, the lack of an admission of liability does not obviate the agreement of the parties that the court make findings, based on the evidence, as to whether certain statements are false and defamatory.

In a defamation case, a plaintiff has the burden to prove that a statement defamed him and the burden to prove the extent of his damages with certainty. Statements that injure a person in his office, business, profession, or occupation, or statements that impute that a person committed a crime that he did not commit, may be defamatory per se. *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006). Whether a statement is reasonably capable of the defamatory meaning alleged, and whether a statement is defamatory per se, are questions of law for the court. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex. 1987). "In answering this question, the court must construe each statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement." *Fiber Sys.*, 470 F.3d at 1163 (quoting *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied).

However, merely identifying statements that are false and defamatory as a matter of law does not establish that the person who made the statements owes any damages, or pecuniary amount, to a the defamed party. Damages must be proven or may be presumed.

A derogatory statement, which no one believes, could be made, and such a statement does not damage any person's reputation. For example, in this case, those familiar with the practice of law and the requirements of legal practice might conclude that Ms. Lowe's statements stem from a lack of understanding and frustration and might not think any less of the Floyds. Or, a disgruntled

person might attack a person's excellent reputation with derogatory statements that no person of reason would believe.

The court is aware that Ms. Lowe, as a layperson, may not be familiar with the practice of retaining legal representation using real property as collateral. Transferring real property to an attorney as collateral for attorney's fees is not unheard of in Texas. *See, e.g.*, *Alvarado v. Alvarado*, No. 13-00-690-CV, 2002 WL 1072067, at *6 (Tex. App.—Corpus Christi May 30, 2002, no pet.). From the evidence presented, the court finds that at the end of the transaction between Douglas Floyd and Ms. Lowe, Ms. Lowe was in full possession of the property and that no cloud existed on the title to Ms. Lowe's property.

After considering all of the exhibits submitted by both parties, including the sworn deposition of Ms. Lowe, the court concludes as a matter of law that all statements and implications in Report No. 1153049 and Report No. 492539 that the Floyds stole Ms. Lowe's home are both injurious to the Floyds' businesses and an imputation that they committed crimes—theft and fraud—that they did not commit. All such statements are false and defamatory per se. Likewise, all statements and inferences in Report No. 1153049 and Report No. 492539 that either Douglas Floyd or Mark Floyd lied are false as a matter of law and defamatory per se.

Nevertheless, the evidence does not establish an actual amount of damages, and there has been no finding by a jury or by the court of actual damages. It is true that under Texas law, damages may be presumed when a court finds that an utterance is defamatory per se. But, the Floyds' claims as to presumed damages are barred due to the Floyds' failure to request a retraction or correction of Ms. Lowe's statements on RipoffReport.com. (Dkt. # 85, at p. 5) (citing TEX. CIV. PRAC. & REM. CODE § 73.055(c)). The court concludes that there is no basis for finding that Ms. Lowe is liable to either Mark or Douglas Floyd for any amount of damages.

## II.     The Floyds' Motion for Attorney's Fees

The Floyds have filed a Motion for Attorney's Fees. (Dkt. # 103). The Floyds argue that they are entitled to attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code because Ms. Lowe breached the settlement agreement, which was in the form of an oral contract, announced on the record on February 1, 2017, by not resolving the dispute as the Floyds wished. Ms. Lowe is no more at fault in disputing the terms of the settlement than the Floyds. In fact, the Floyds failed to respond to Ms. Lowe's latest proposed order, which incorporated much of the Floyds' requested language. (*see* Dkt. # 105).

It is therefore ORDERED that he Floyds' Motion for Attorney's Fees is DENIED.

It is further ORDERED that Ms. Lowe (Satu Tuulia Aalaei) is not liable to the Floyds for any amount of damages.

It is further ORDERED that Plaintiffs' Motion for Leave (Dkt. # 94) is GRANTED, Plaintiffs' Motion for Entry of Proposed Order (Dkt. # 95) is GRANTED IN PART and DENIED IN PART, and Defendant's Motion to Enforce Settlement Agreement (Dkt. # 98) is GRANTED IN PART and DENIED IN PART.

The parties are ORDERED to submit this Memorandum Opinion and Order to RipoffReport.com by August 11, 2017, and are ordered to file a notice with this court, signed by all parties, stating that they have submitted said Order.

The court will enter final judgment separately.

**So ORDERED and SIGNED this 24th day of July, 2017.**

_____
Ron Clark, United States District Judge

11